**COMMERCIAL MOTOR FREIGHT, INC., Plaintiff-Appellee v EBRIGHT, etc., et, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3537. Decided June 15, 1943.

W. E. Benoy, Columbus, and A. M. Sebastian, Columbus, for plaintiff-appellee.

Thomas J. Herbert, Attorney General, Columbus, and John M. Woy, Asst. Atty. Gen'l., Columbus, for defendants-appellants.

## OPINION

By GEIGER, J.

This matter is before us on appeal from a judgment of the Court of Common Pleas in favor of the plaintiff-appellee.

As briefly as possible we will state the issues. The plaintiff below, The Commercial Motor Freight, Inc., is a corporation engaged in the hauling of freight throughout the state of Ohio. The defendant, Don H. Ebright, is the treasurer of the state of Ohio and custodian of the Unemployment Compensation Fund provided by §1345-2 GC. Herschel G. Atkinson is the duly appointed administrator of said Bureau. The plaintiff was an "employer" within the meaning of §1345-1 GC. Plaintiff returned to the administrator during the years 1936 to 1939 correct reports of the wages paid to its employees and paid the correct amounts of contribution legally required of it. Plaintiff alleges that nothwithstanding the filing of the returns in the full and correct amounts, the defendant Atkinson, assuming to act under authority of §1345-13, illegally and arbitrarily and without authority, on the 13th day of November, 1940, prepared and filed a supplemental report, purporting to set forth additional wages subject to contribution. He determined that the plaintiff had paid additional wages subject to contribution and demanded such contribution in the sum of $12,623.62, which the plaintiff was required to pay as an additional contribution. The same was paid under protest; Atkinson collected said additional contribution upon the assumption that plaintiff was an employer under contract of hire of certain owners of motor carrier equipment, whereas in truth the relationship of employer and employee did not exist; that such owners were not employed under contract of hire, and that the plaintiff paid such owners no taxible wages; plaintiff during the period in question was a common carrier of freight, having terminals at various cities throughout Ohio; that as such common carrier and for transportation between terminals it loaded freight in semi-trailers; that it owned certain over-the-road equipment operated by its regular employees, but did not have sufficient tractors of its own to transport all of the semi-trailer loads of freight; that it owned the semi-trailers, but engaged the persons with respect to whom the alleged wage is claimed to have been paid, under an independent contract to transport said semi-trailer loads of freight by means of tractors owned by them.

The petition then sets out at great length conditions which the plaintiff claims establishes the fact that the owners of the tractors were independent contractors and not employees, and that consequently no wages were paid to them which were subject to contribution. Plaintiff alleges that it had and exercised no control over the performance of the transportation of the loaded semi-trailers and exercised no control over the employees of said owners.

It is alleged that the contributions so paid by the plaintiff in the amount of $12,623.62 were paid to Herschel C. Atkinson under protest, and that plaintiff is entitled to an order directing Atkinson to deliver to plaintiff his voucher for a refund of the taxes collected.

Plaintiff prays that the court determine that the assessment was erroneously exacted and that the same be ordered refunded by Atkinson in the sum of $12,623.62.

Defendants admit the formal matters, but deny all other allegations and pray that the court find that the contributions set forth were legally assessed and collected. Counsel for plaintiff and defendants filed an agreed statement of facts touching formal matters.

The action came on for hearing before a judge of the Court of Common Pleas, a jury being waived, seeking the recovery of the $12,623.62. The court below in his opinion states that the status of the owner-operators was fully considered by the Court of Common Pleas in the case of State v Commercial Motor Freight, and that it was there determined that the relationship between the plaintiff and the operators was that of principal and independent contractor and not that of employer and employee. The court says, in substance, that having determined that the relationship of principal and independent contractor exists between the parties, the sole issue for consideration is whether or not these independent contractors were in employment by the Commercial Motor Freight under the Unemployment Compensation Law of Ohio. The court, after examining the several sections of the act, especially Sections C and D, concludes that the "owner-operators" are not subject to the Unemployment Compensation Act, and that the plaintiff is not liable for payment into the fund on their behalf and so holds. As an incidental matter, the court holds that it has jurisdiction to determine the issues.

The case to which the Court of Common Pleas refers as determining the question that the relation between the "owner-operators" was that of principal and independent contractor and not an employer and employee was reviewed by the court in the case of State, ex Herbert, Plaintiff-Appellant, v The Commercial Motor Freight, Inc., 37 Abs, 480, wherein the relationship of said freight company to the State Insurance Fund was under examination. The court below in that case held that the relationship existing was not that of employer and employee. Our court instead of rendering an original opinion adopted that of the court below.

The court below states:

"Having determined therefore that the relationship of principal and independent contractor exists between the parties here in question. the sole issue for the consideration of this case is whether or not these independent contractors were in the employment of the

Commercial Motor Freight under the Unemployment Compensation Laws."

This requires us to examine the Unemployment Compensation sections, in order that we may determine whether the issue is solely whether the compensation paid by the motor freight company to an independent contractor does or does not furnish a basis for contribution.

Section 1345-1b provides, "Employer" means any individual, etc., who had in employment three or more individuals at any one time within the period designated by the statute. Each individual employed to assist in performing the work of any employee of an employer shall be deemed to be employed by such employer for the purpose of the act, whether such individual was hired or paid directly by such employer or by such employee.

Section 1345-1c, provides "Employment" means service, including service performed in interstate commerce, performed for remuneration under any contract of hire, written or oral, express or implied.

Section 1345-1d:

"Services performed by an individual for remuneration shall be deemed to be employment subject to this act unless and until it is shown to the satisfaction of the commission that (i) such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact; and (ii) such service is outside the usual course of the business for which such service is performed; and (iii) such individual is customarily engaged in an independently established trade, occupation, profession or business."

(j) "Contributions" means the money payment to the State Unemployment Compensation Fund required by this act.

By the provisions of §1345-2, there is created an Unemployment Compensation Fund to be administered by the State. This fund shall consist of all contributions collected under the act.

Section 1345-4, provides that on and after December 31, 1936, contributions shall accrue and become payable by each employer. This section then provides that each employer shall pay contributions equal to certain percentages.

Section 1345-6, provides that each eligible individual shall receive benefits as a compensation for the loss of remuneration due to total or partial unemployment in the amounts therein specified.

The appellants assert the following assignments of error:

(1) That the finding, decision and judgment of the Court of Common Pleas is contrary to law.

(2) The court erred in overruling the defendant-appellants' motion for new trial.

(3)   The court erred in holding that it had jurisdiction of the case.

We will state a brief history of the case.   Commercial Motor Freight is an employer which filed reports and made contributions on certain of its employees, but did not pay contribution on that part of the remuneration which was paid owner-operator in consideration of their personal service in operating their tractors in carrying the freight of the plaintiff.   These operators who own tractors are known as "Over-the-road-operators", "City-pick-up and Delivery Men", and "Peddler Operators".   The Federal Government audited plaintiff's books and made a finding that it was indebted to the Federal Government in certain sums as contributions on the amount which the plaintiff paid these owner-operators.   Up until that time the state had made no demand upon the plaintiff for contributions, but when the Federal Government assessed the plaintiff for contributions the plaintiff appealed to the Bureau of Unemployment Compensation and requested that it be allowed to pay under protest, which it did in the sum of $12,623.62, and immediately filed suit to recover the same.   On September 30, 1942, the Court of Common Pleas found in favor of the plaintiff and ordered a refund.   This court recently decided the case of the Commercial Motor Freight, No. 3503, as heretofore cited.   That was not a case involving the Unemployment Compensation, but was one falling within the provisions of the Workmen's Compensation Act.   If it is true as the court below has held, that the plaintiff was only obliged to pay contribution upon wages paid by it as an employer to its employees, then the case above referred to holding that the relationship of employer and employee did not exist, is of prime importance.   However, we are confronted with a situation that at first seems to us rather startling.   The statutes which we have cited indicate beyond question that the Legislature had an intention of requiring contribution from those who employed labor, whether such employment be that of an independent contractor or the ordinary common law relationship of employer and employee as contemplated in the Workmen's Compensation Act.   We are frank to say that upon first examination we were of the opinion that where the relationship of employer and employee did not exist, but where the contract was between independent operators, that there was no requirement that the one paying the compensation should be further required to contribute to an unemployment fund.   We could see no reason why the employer, furnishing the compensation to an independent contractor, should be further penalized by being required to furnish contribution to cover the statutory benefits provided for his independent contractor in the case of unemployment.   The employer had no recourse to any fund in the event that due to hard times or restricted industry he lost employment which might be a serious drain upon his resources.   In order to understand the provisions of

the statute for unemployment compensation we must realize that the Legislature by statutory definition intended to and did extend the definition of employment far beyond that generally understood. The court below based his decision upon the proposition that having determined that the relationship of principal and independent contractor exists between the parties, the sole issue for the consideration of the case is whether or not these independent contractors were in the employment of the Commercial Motor Freight under the Unemployment Compensation Law. The court may be correct in the statement of what the issue is, but the question arises whether it is correct to consider only the common law relation of employer and employee, or whether we must go forward and examine what additional limitations are provided by the statute.

Section 1345-1b defines "employer" as an individual who had in his employment three or more individuals at the time designated by the statute. "Employment" means service performed for remuneration under any contract of hire, written or oral, express or implied.

Section 1345-1c provides much room for serious controversy. It is not a very clear statement of the legislative intent if the Legislature as a matter of fact had any very well defined intent. It provides that services performed by an individual for remuneration shall be deemed to be employment subject to the act, unless and until three conditions enumerated are shown to the satisfaction of the commission. The first condition is that such individual has been and will continue to be free from control or direction over the performance of such service, both under his contract of service and in fact. The evidence indicates in this case that 98 per cent of the service is furnished by the owners of single motor operation; that the service of such a truck is entirely under the control of the Commercial Motor Freight, as to its coming and going, the route it is to take, the goods that it is to haul, the place of delivery and the time of return. It cannot be said that said motor owners are entirely free from general control or direction over the performance of this service, although not as to the manner of its performance. It will be observed that the Legislature took the precaution to say that this condition should be shown to exist, both under the contract of service and **in fact.** This seems to us to be a well considered safeguard by which the parties were prevented from entering into what appeared to be a relation free from control or direction by the person paying the compensation, but which, as a matter of fact, were not so.

The next provision is that it must be shown that the service rendered is outside the usual course of business for which such service is performed. The evidence shows that these motor vehicles are all set and geared to the picking up and transporting of the trailer-truck. They had no other function and were effective for this purpose and furnished to the owner a fair remuneration by a

compensation of about eight cents per mile. We do not think that the plaintiff has shown that the services rendered are outside the usual course of business for which such service is performed.

The third provision is that such individual is customarily engaged in an independently established trade, occupation, profession or business. Just what may be meant by this phraseology may be difficult to definitely determine. Under the conditions disclosed by the evidence the individual is customarily engaged in a definite service rendered to the Commercial Motor Freight Comporation under its direction and control, and it is scarcely possible to say that those operating these motor vehicles are engaged in an independently established trade, occupation, profession or business.

We, therefore, must arrive at the conclusion that the Legislature in its attempt to provide unemployment compensation for those who are engaged for a remuneration has sought to stop all loopholes by which a claim may be made that there is no relation of employer or employee and therefore no obligation upon the part of the owner furnishing the compensation to provide for the days of nonemployment. The three provisions enumerated in §1345-1 **D** have apparently been adopted in varying terms by practically all the states that have adequate nonemployment compensation and the decisions are numerous to the effect that there must be a compliance with these provisions providing for exceptions. We might note a few cases:

State v. Geessman, Supreme Court of Washington, 123 Pac. Rep. 201:

"Under the unemployment compensation act, taxable employment is not confined to the relation of master and servant."

"In order to be exempt from provisions of the Unemployment Compensation Act, where it is shown that individuals performed services for remuneration, it is necessary to show that the workers come within exceptions mentioned in said act." (The exceptions being substantially the same as those enumerated in the Ohio act.)

Young v Bureau of Unemployment Compensation, Court of Appeals of Georgia, 10 S. W. (2d), 412:

"Courts, as well as administrator of the Unemployment Compensation Act, must liberally construe and apply the act in light of public policy of the state, as declared in the act, and should be guided by the fact that the act is intended to provide some income for persons who are. without fault, temporarily out of employment."

"In order that an employer working an individual for wages may be exempted from the unemployment compensation act, all three of the statutory elements designated as A, B, and C must be established." (These are the same as found in the Ohio law.)

"An individual who works for wages comes under the unemployment compensation act unless it is shown to satisfaction of the Commissioner of Labor that individual's employment falls within the three classes of the act." (Same as Ohio.)

Unemployment Compensation Commission of North Carolina v Jefferson Standard Life Ins. Co., 2 S. E. Rep. (2d), 384:

"The words 'employment', 'employer', 'employing unit', 'wages' and 'remuneration' in the Unemployment Compensation Act, are not used as words with rigid, precise and restricted meanings, but as broad terms of description, evidencing legislative intent to give act broad and liberal coverage, so as to alleviate effects of unemployment."

The only case we have found in Ohio is that of **State of Ohio, Plaintiff-Appellant, v. R. V. Idam, d.b.a. Idam Beauty Parlor,** Muskingum County Court of Appeals, opinion by Sherick, J., not published. That court there takes the view that all three of the exceptions enumerated in the statute must be proven to the satisfaction of the commission before the employer is relieved from contribution.

As before stated we started the consideration of this case with a predilection toward the view that where there was no employment under the common law rule of employer and employee, and that there was no contribution required. We are compelled to recede from this position by virtue of the statute and such decisions as have been drawn to our attention. Counsel for both sides have been diligent in furnishing us elaborate briefs. We have examined the cases so far as possible and are of the opinion that the briefs presented by counsel for appellant are more convincing than those presented by the appellee.

Decision of the court below reversed.

BARNES, P. J., and HORNBECK, J., concur.

## APPLICATION FOR REHEARING

No. 3537. Decided July 13, 1943.

BY THE COURT:

We have before us an application for rehearing by the appellee, together with appellants' answer brief and appellee's reply brief. Counsel presents an interesting document and one which raises some questions in our minds as to whether our former decision in this case was correct in all respects. As we stated in our original

opinion, we approach the case with a predilection towards the view that where there was no employment under the common law rule of employer and employee, that there was no contribution required. Our preliminary view in this matter was much the same in principle as that now urged by counsel for appellee, but we find ourselves compelled to recede from this position by virtue of the statutes as we interpret them. Counsel has made the assertion that we have not passed on all the questions involved in the case. That is probably true and no matter how many we may have passed on, counsel would still be able to find others on which we did not pass. We are obliged by statute to pass upon all assignments of error, but are not required to go afield to discover errors not assigned. See §12223-21. Errors not argued by brief may be disregarded, but the court in its discretion may consider and decide errors which are not assigned. All errors **assigned** shall be passed upon by the court, and in every case where a judgment is reversed and remanded in its mandate to the court below, the reviewing court shall state the error or errors found upon which the reversal is founded.

We have given attention to the matters now presented by counsel, but find nothing that has not been considered and we therefore find no good reason why the application should be granted. Application denied.

Counsel makes an intriguing suggestion that in view of the lapse of time since this case was argued, that the application for reconsideration be sustained and the case set down for reargument at the September term, for which counsel for both sides be allowed time in which to cover the authorities and questions presented in the record. The last case cited by the appellee, Mutual Trucking Co. v U. S. of America, No. 4840, U. S. District Court, for the Northern District of Ohio, arises under the Federal Act, which differs from our controlling statute. It is asserted that this is a test case and that since the same was submitted, many additional decisions have been announced which have not been presented to the court in an orderly manner. It has occurred to us that that method of proceeding will not advance final determination of this case by the court of last resort. We believe the better method would be for counsel to directly appeal the case to the Supreme Court as it must ultimately go to that court for a final determination. While we are waiting, as suggested by counsel, for the coming of the September term, the same time could be applied to the preliminary matters in the Supreme Court. If there are any cases that counsel may cite which under the Constitution of Ohio involve a different finding by another Court of Appeals, we would gladly certify the case as in conflict, which would assure counsel of a certain and speedy hearing.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.